NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

TRIANGLE EXPRESS, INC.,
Respondent.

No. 80–2186.

United States Court of Appeals,
Tenth Circuit.

July 22, 1982.

John P. Coyle, Atty., Washington, D. C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, Andrew F. Tranovich and Karen J. Ward, Attys., N. L. R. B., Washington, D. C., with him on the brief), for petitioner.

Richard L. Barnes of Kothe, Nichols & Wolfe, Tulsa, Okl., for respondent.

Before DOYLE, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

The National Labor Relations Board (Board) seeks to enforce its order that found Triangle Express, Inc. (Triangle) had committed an unfair labor practice by refusing to bargain with the Teamsters Union, and that directed Triangle to bargain with the union.

The Board scheduled a representation election for Triangle's truck drivers, checkers, and dockmen to choose whether the Teamsters Union would serve as their collective bargaining representative. As required by law, within seven days of the Board's scheduling the election, Triangle filed with the Regional Director the names and addresses of employees eligible to vote in the election. This is commonly called the *Excelsior* list, which the Regional Director then makes available to the union. *See Excelsior Underwear, Inc.,* 156 N.L.R.B. 1236, 1239–40 (1966). The list assists the union in contacting employees eligible to

vote; additionally, it serves as a prima facie list of eligible voters on election day.

In compiling the *Excelsior* list Triangle mistakenly omitted four part-time employees eligible to vote.[1] The union won the election by an 8 to 5 vote, with the omitted part-time employees making no attempt to vote. Triangle, conceding its fault in omitting the employees from the list, then asked the Regional Director for a new election on grounds that these employees were disenfranchised, and that the union knew of Triangle's mistake but never informed the Board or Triangle of the error and should not be allowed to benefit by its silence.

The Regional Director rejected Triangle's contentions, finding that although the four employees' names did not appear on the *Excelsior* list, the omission did not cause them to be disenfranchised:

"There is no evidence that any party sought to prevent the 4 employees from going to the polls .... [I]f they had appeared at the voting place presumably they would have been allowed to vote by challenged ballot. Further, the official notice posted on the Employer's premises clearly indicated that 'regular part-time truckdrivers, checkers and dockmen' were eligible voters, nowhere indicating that any employee was ineligible because of his membership in another labor organization. Based on the evidence presented it would appear that excluding the 4 employees from the *Excelsior* list did not disenfranchise them."

The Board adopted the Regional Director's findings, rejected Triangle's objections, and certified the Teamsters as the employees' bargaining representative. Thereafter, in order to gain judicial review of the Board's

decision, Triangle refused to bargain with the Teamsters.[2]

On appeal Triangle raises essentially the same contentions it raised before the Regional Director. In response, the Board alleges that the omission from the list did not disenfranchise the four employees; but even if they were disenfranchised, the employer has exclusive responsibility for providing the *Excelsior* list, and we should not set aside an election because of objections raised by the party responsible for the objectionable conduct. Additionally, the Board contends that Triangle's contentions are patently frivolous, and therefore we should order Triangle to pay the Board's attorneys' fees and costs.

We need not address whether the union has a duty to come forward when it knows the *Excelsior* list is inaccurate, because we agree with the Regional Director's finding that the four employees were not disenfranchised.

■■■ The Board has broad discretion in insuring the "fair and free choice of bargaining representatives by employees." *NLRB v. A. J. Tower Co.*, 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946); accord, *NLRB v. Mattison Machine Works*, 365 U.S. 123, 81 S.Ct. 434, 5 L.Ed.2d 455 (1961). It will set aside an election if the conduct of a party prevents employees from voting, and if those employees' votes might have affected the election result. *Cal Gas Redding, Inc.*, 241 N.L.R.B. 290 (1979); *Versail Mfg., Inc.*, 212 N.L.R.B. 592, 593 (1974); *Yerges Van Liners, Inc.*, 162 N.L.R.B. 1259 (1967). Although the four employees did not vote, and their votes might have altered the election's outcome, the four employees were not disenfranchised because of the

---

1. In an affidavit Triangle President Marjorie Rosengrant stated that a Board agent told her that the four part-time employees would be eligible to vote. Nevertheless she left three names off the *Excelsior* list because one of the part-time employees, who along with two other part-time employees was a firefighter, told her, "The Union won't let us vote because we belong to that rinky-dink firefighters union." She omitted the name of a fourth part-time employee because, though currently employed by Triangle, he apparently had not worked during the

week ending July 30, which was the eligibility cutoff date.

2. To obtain judicial review of a Board decision in either a representation proceeding or an election, an employer must refuse to bargain with the employee's representative, which will result in the Board bringing an unfair labor practice charge against the employer. *Magnesium Casting Co. v. NLRB*, 401 U.S. 137, 139, 91 S.Ct. 599, 600, 27 L.Ed.2d 735 (1971).

*Excelsior* list's inaccuracy. An eligible employee whose name is not on the list may nevertheless vote, and the ballot is set aside as a challenged ballot for later resolution. Under no circumstance is an employee prohibited from voting because his or her name is not on the *Excelsior* list.

The *Excelsior* list is not intended to inform the employees of their voting eligibility. Rather, employees learn about their eligibility through a notice of election, which the Regional Director posts and which specifies what category of worker may vote and what category may not. In the instant case, the posted notice provided that "all ... regular part-time truckdrivers, checkers and dockmen ... employed during the payroll as of July 30, 1979" were eligible to vote, and that "[o]ffice clerical employees, guards and supervisors as defined in the Act" were ineligible.

Triangle does not allege that the four employees in question saw the *Excelsior* list prior to the election, or even that they knew of its existence. Nor does Triangle allege that in any other way a party to the election prevented the four employees from voting. We conclude, therefore, that the four employees were not prevented from voting by the conduct of Triangle, the union, or the Board. The Board did not abuse its discretion in refusing to set aside the election. *See Winter Seal Corp.*, 117 N.L.R.B. 659, 661 (1957).

■ Although we reject Triangle's contentions, we do not consider them so patently frivolous that we should require Triangle to pay the Board's attorneys' fees and costs. *See* Fed.R.App.P. 38. The Board's order is hereby enforced.